Weygandt, C. J.
 

 At the threshold of these actions is the chief contention of the defendants that the allegations of the amended petitions disclose such conduct on the part of each plaintiff as to preclude recovery for the injuries of which he complains. In other words, it is urged that each purchaser and the sellers were engaged in a common enterprise involving a violation of the law prohibiting the sale and purchase of intoxicating liquors, and that therefore neither party is in position to ask relief in a court of law.
 

 To this argument each plaintiff replies that his petition discloses no violation of law on his part; that neither the sale nor the purchase of Jamaica ginger is prohibited by law; that, even if there were a violation
 
 *144
 
 of law, it is not such as would prevent recovery, because the parties were not
 
 in pari delicto.
 

 It is the view of this court that there are several reasons why this latter contention of the plaintiffs must be sustained. In the first place, it must be remembered that the ultimate question presented at this time is whether these amended petitions are good as against demurrer. Therefore, under the well-settled rule, these plaintiffs must be indulged the most favorable inferences that can reasonably be drawn from their allegations. However, even if, for the sake of mere argument, a violation of law be assumed, it must be carefully noted that the misconduct of all the parties was not the same. The transaction in which the plaintiffs intended to participate was the sale and purchase of Jamaica ginger, but, according to the petitions, the thing that actually transpired was very different. Unknown to plaintiffs, the fluid substance received by them from the defendants was not Jamaica ginger, but some misbranded and mislabeled poison. It can hardly be seriously urged that under such circumstances the defendants could deliver the noxious poison and then escape liability on the ground that the plaintiffs had unlawfully asked for Jamaica ginger —a wholly different substance. Furthermore, these parties cannot be considered
 
 in pari delicto,
 
 inasmuch as the possession and sale of intoxicating liquors are regarded as
 
 malum prohibitum
 
 rather than
 
 malum in se.
 

 In Woodward on Quasi Contracts, on page 216, appears the following statement of the rule:
 

 “In respect to offenses in which is involved any moral delinquency or turpitude all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But where the offense is merely
 
 malum prohibitum,
 
 and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer jus
 
 *145
 
 tice between them, although both parties are wrongdoers.”
 

 Defendants rely upon the cases of
 
 Kahn, Jr.,
 
 v.
 
 Walton,
 
 46 Ohio St., 195, 20 N. E., 203, and
 
 Oberlin
 
 v.
 
 Upson,
 
 84 Ohio St., 111, 95 N. E., 511, Ann. Cas., 1912B, 1061. However, these decisions are of little assistance here. A study of the opinions shows that in each case the parties were equally at fault. The unlawful transactions in which they participated were precisely those intended by each party. Furthermore, in the first case the action was one in chancery.
 

 Having disposed of defendants’ chief contention with reference to the conduct of the plaintiffs, it is unnecessary to add more than a brief statement as to the statutory and common-law liability of the defendants. In 14 Ohio Jurisprudence, at page 1061, appears the following summary of the general rule:
 

 “In fact, the practical result of the cases is that a druggist who, by mistake or inadvertence, sells a harmful drug in place of the harmless one called for, is liable for the injurious consequences thereof, unless the purchaser himself was eontributorily negligent, or the proof fails to establish that the mistake was the proximate cause of the injury, although in theory a druggist is liable only if he is negligent; negligence here is, as in other cases, the failure to exercise ordinary care; what is ordinary care, however, depends upon the circumstances of the particular transaction. In the case of a druggist selling drugs, it is care to give the medicine asked for, and not some other medicine likely to cause injury. On the other hand, the druggist is bound only to exercise the skill generally possessed by well-educated druggists, not the highest skill and learning, which can be attained by a few men of rare genius, endowments, or opportunities, for this would be impracticable, — but that usually possessed by those esteemed competent in their business. A druggist, in the conduct of a drug store and in dispens
 
 *146
 
 ing its commodities, is bound to use that degree of care in the dispensing of the drugs that persons of ordinary-prudence engaged in that business are accustomed to use under the same or similar circumstances. As has been aptly stated, the phrase, ‘ordinary care,’ in reference to the business of a druggist, must be held to signify ‘the highest practicable degree of prudence, thoughtfulness, and vigilance, and the most exact and-reliable safeguards consistent with the reasonable conduct of the business, in order that human life may not constantly be exposed to the danger flowing from the substitution of deadly poisons for harmless medicines.’ ”
 

 A further discussion of the rule appears in the cases of
 
 Davis
 
 v. Guarnieri, 45 Ohio St., 470, 15 N. E., 350, 4 Am. St. Rep., 548;
 
 State
 
 v. Kelly, 54 Ohio St., 166, 43 N. E., 163, and
 
 Edelstein
 
 v. Cook, 108 Ohio St., 346, 140 N. E., 765, 31 A. L. R., 1333.
 

 Furthermore, in the case of
 
 Portage Markets Co.
 
 v.
 
 George,
 
 111 Ohio St., 775, 146 N. E., 283, this court held that the Pure Food and Drug Laws of Ohio are statutes passed for the protection of the public, and that the violation of them is negligence
 
 per se. Schell
 
 v.
 
 Du Bois, Admr.,
 
 94 Ohio St., 93, 113 N. E., 664, L. R. A., 1917A, 710.
 

 In view of the foregoing, the judgments of the Court of Appeals must be affirmed.
 

 Judgments affirmed.
 

 Day, Allen, Stephenson, Jones and Matthias, JJ., concur.
 

 Bevis, J., not participating.